937 F.2d 602
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William T. ELLIS, Petitioner-Appellant,
and
Wilma O. Ellis, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 89-2230.
 United States Court of Appeals, Fourth Circuit.
 Argued March 1, 1991.
Decided July 12, 1991.
 
 Appeal from the United States Tax Court. (Tax Ct. No. 44233-86)
 D. French Slaughter, McGuire, Woods, Battle & Boothe, Charlottesville, Va., for appellant.
 Robert Leslie Baker, Tax Division, United States Department of Justice, Washington, D.C. (Argued), for appellee; Shirley D. Peterson, Assistant Attorney General, Gary R. Allen, Richard Farber, Tax Division, United States Department of Justice, Washington, D.C., on brief.
 USTC
 AFFIRMED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and W. EARL BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 William T. Ellis[1] (Ellis) appeals the Tax Court's determination of a deficiency in the joint federal income tax liability that he and his wife, Wilma O. Ellis, owe for the 1982 tax year.[2] Ellis contends that the Tax Court erred in upholding the disallowance by the Commissioner of Internal Revenue (Commissioner) of Mrs. Ellis' deduction of her share of Triad Distributors, Inc.'s (hereinafter Triad) net operating losses. Because we find that the Commissioner correctly disallowed the loss deductions at issue, we affirm.
 
 
 2
 * In 1981, Wilma O. Ellis and J. Robert Rogers formed Triad and incorporated it in West Virginia in order to engage in the wine wholesale business. Mrs. Ellis and Rogers each owned fifty percent of Triad's common stock, and together they contributed a total of $50,000 to Triad in exchange for the stock. Mr. Ellis did not own any Triad stock. Triad filed an election under Sec. 1372 of the Internal Revenue Code to be treated as a small business corporation. 26 U.S.C. Sec. 1372.
 
 
 3
 Triad received loans from Charleston National Bank (CNB) and Bank of Danville during 1982. CNB secured its loan with a purchase money lien on Triad's inventory, and Bank of Danville held a lien on other unidentified assets of Triad. In addition, CNB and Bank of Danville required the Ellises and Rogers to personally guarantee the loans. Triad borrowed more than $200,000 from each bank.
 
 
 4
 By August 1982, Triad could not finance its continued operations. Triad was delinquent on its debt to CNB, so CNB repossessed and liquidated Triad's wine inventory. After the repossession and liquidation of its inventory, Triad did not resume active business operations. The proceeds from the liquidation failed to satisfy Triad's debt to CNB, however. In a letter dated September 14, 1982, CNB informed the Ellises and Rogers that it was looking to them as guarantors to satisfy or to provide additional security for the debt. If they failed to do so, CNB warned the Ellises and Rogers that it would exercise its rights pursuant to the personal guarantees. Triad was insolvent at this point. A financial statement dated June 6, 1983 showed that Triad had a negative net worth of $526,400.26 as of December 31, 1982.
 
 
 5
 Triad's debt to CNB was represented by six 90-day notes of various amounts (the 90-day notes). By November 1982, the Ellises and Rogers agreed that the Ellises would satisfy the 90-day notes with a new note in which they would assume sole liability and provide additional security. In return, Rogers would satisfy Triad's debt to Bank of Danville.
 
 
 6
 The Ellises then negotiated with CNB for the execution of a new note with sufficient security so that Rogers would not have to be a party to it. On November 20, 1982, Triad and the Ellises executed a consolidation note in the amount of $261,838.58. This amount included the outstanding balance that Triad owed CNB, in addition to $50,000 that Mr. Ellis and Rogers previously had borrowed from CNB. The proceeds from the $50,000 loan were allegedly used in connection with Triad. Jamon Real Estate Corporation (Jamon) assigned some of its assets as security for the consolidation note. Mr. Ellis owned 75% of Jamon's stock.
 
 
 7
 At the time that she signed the consolidation note, Mrs. Ellis was secretary of Triad. In her capacity as secretary of the corporation, she was authorized to act on behalf of Triad with CNB "in all matters and transaction relating to any of [Triad's] business with said Bank." J.A. at 184. The parties executed the consolidation note in the following manner:
 
 
 8
 Triad Distributors, Inc.
 
 
 9
 /s/ W.T. Ellis
 
 
 10
 /s/ Wilma Ellis, Sec.
 
 
 11
 /s/ W.T. Ellis
 
 
 12
 /s/ Wilma O. Ellis
 
 
 13
 The Ellises and CNB agreed that payments would not be made on the consolidation note until 1983. Beginning in 1983, the Ellises made payments on the consolidation note. Triad never made any payments on the note.
 
 
 14
 In May 1984, the Internal Revenue Service (IRS) began to investigate the Ellises' tax returns for the years 1978 through 1983. On August 27, 1986, the Commissioner issued the Ellises a formal notice of deficiency.
 
 
 15
 On September 30, 1985, the Ellises filed a complaint in the Circuit Court of Kanawha County, West Virginia, seeking a court order retroactively removing Triad from the consolidation note as of November 20, 1982. The Ellises claimed that Triad was not a proper party to the note because Mrs. Ellis lacked the authority to obligate Triad on the consolidation note, and because Triad was not intended to be a party to the note. In its answer, CNB explained that it intended that the Ellises would be "primarily" responsible for the obligation represented by the consolidation note, that it never expected to receive any payments from Triad, and that Triad's "inclusion on the note was mere surplusage." J.A. at 212-213. The state court granted summary judgment in the Ellises' favor, ordering that the consolidation note "be reformed and modified by striking the words 'Triad Distributors, Inc.' and 'S.E.C.' " J.A. at 215.
 
 
 16
 In the years 1981 through 1983, the Ellises claimed deductions for Mrs. Ellis' share of Triad's net operating losses. The Commissioner disallowed the deductions to the extent that they exceeded Mrs. Ellis' adjusted basis in Triad. In 1982, the only year in question on appeal, Mrs. Ellis claimed a loss deduction of $219,387, and the Commissioner disallowed $219,041 of that deduction.
 
 
 17
 On appeal, Ellis contends that his wife's execution of the consolidation note constituted an economic outlay that gave rise to an increase in her adjusted basis in Triad under Internal Revenue Code Sec. 1374(c)(2)(A). In the alternative, Ellis argues that upon execution of the consolidation note, Mrs. Ellis became subrogated to CNB's rights under the 90-day notes. According to Ellis, this subrogation caused the indebtedness of Triad to Mrs. Ellis under Sec. 1374(c)(2)(B), thereby allowing the Ellises to claim the deduction in question. We agree with the Tax Court's rejection of each of these arguments, and we affirm on the Tax Court's reasoning as expressed in its opinion. Ellis v. Commissioner, 57 T.C.M. (CCH) 677 (1989).
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Although both William T. Ellis and his wife, Wilma O. Ellis, are listed on the notice of appeal, Mrs. Ellis failed to sign the notice of appeal. We therefore dismiss the appeal as to Wilma O. Ellis. Covington v. Allsbrook, 636 F.2d 63 (4th Cir.1980). This does not have any substantive effect on the outcome of the case, however, since Mr. and Mrs. Ellis filed a joint tax return and are therefore jointly liable for any federal taxes owed
 
 
 [2]
 The Tax Court also determined that there was a deficiency in taxes owed by the Ellises for the tax years 1980 and 1983, but Ellis only appeals the Tax Court's determination of liability for 1982